**No. 23-10719**

# In the United States Court of Appeals for the Eleventh Circuit



MONTERIA NAJUDA ROBINSON,
AS THE NATURAL PARENT OF JAMARION RASHAD ROBINSON
AND ESTATE OF JAMARION RASHAD ROBINSON,

*Plaintiff-Appellant,*

v.

ERIC HEINZE. KRISTOPHER HUTCHENS AND PAMELA J. DOYLE,
AS ADMINISTRATOR OF THE ESTATE OF DANIEL DOYLE,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Northern District of Georgia
No. 1:18-cv-00131-TCB, Hon. Timothy C. Batten, Sr.

## APPELLANT'S OPENING BRIEF

Mario B. Williams
(Ga. Bar No. 235254)
*Counsel of Record*
NDH LLC
44 Broad Street NW, Suite 200
Atlanta, GA 30303
Ph: (404) 254-0442
Fax: (404) 935-9591
mwilliams@hdrattorneys.com
admin@hdrattorneys.com

June 26, 2023                                    *Counsel for Appellant*

No. 23-10719

**Monteria Najuda Robinson**
v.
**Eric Heinze, Et Al.**

_____

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

In compliance with Fed. R. App. P. 26.1 and 28(a), and Eleventh Circuit Rules 26.1 to 26.3, Appellant certifies that the following people and entities have an interest in the outcome of this appeal:

Babb, Barry H., Fayette County Sheriff

Batten, Hon. Timothy C., United States District Judge

Betts, David E., Counsel for Appellant

Blaylock, Thomas, Counsel for Fulton County

Carothers, Richard A., Counsel for City of East Point

Choy, Sun S., Counsel for Sheriff Barry H. Babb & Clayton Cty.

City of Atlanta, Co-Defendant

City of East Point, Co-Defendant

Clayton County, Co-Defendant

Coty, Darcy F., Assistant United States Attorney

C-1

Dempsey, Brian R., Counsel for City of East Point

Doyle, Daniel, Fulton County Detective (*Deceased*)

Doyle, Pamela J., Administrator of Estate of Daniel Doyle

Durand, Daniel, Clayton Cty. Fire Dept. Medic

Erskine, Kurt R., Acting United States Attorney

Fulton County, Co-Defendant

Heinze, Eric, Co-Defendant

Hutchens, Kristopher, Clayton County Police Officer

Jackson, Wesley C., Counsel for Sheriff Barry H. Babb & Clayton Cty.

Jones, Valorri C., Counsel for City of Atlanta

Kearns, Stephanie A., Executive Director, Federal Defender Program

Kindred, Santez, Co-Defendant

Loegel, Jonathan D., Counsel for Fulton County

Mauney, Joshua, Fayette County Sheriff's Officer

Mendel, Gabriel A., Assistant United States Attorney

Miller, Staci J., Counsel for City of Atlanta

O'Hare, Steve, Atlanta Police Detective

Pak, Byung J., former United States Attorney

Palmer, Ashley J.M., Counsel for Fulton County

Raspberry, Brenda A., Counsel for City of Atlanta

Robinson, Jamarion R., Appellant (*Deceased*)

Robinson, Monteria N., Appellant

Sauls, William, Atlanta Police Officer

Schreckengost, Steve, Atlanta Police Detective

Traynor, William G., Assistant United States Attorney

United States of America, Appellee

Williams, Mario B., Counsel for Appellant

————————————————

No publicly traded company or corporation has an interest in the outcome of the case or appeal.

## REQUEST FOR ORAL ARGUMENT

The parties have already been to this Court on appeal; this Court, in a published opinion, reversed part of the district court, and as such Ms. Robinson thought that she was going to receive a jury trial. (*See Robinson v. Sauls*, 46 F.4th 1332 (11th Cir. 2022).) Instead, Appellees filed another motion at the lower court based on *Egbert v. Boule*, 142 S. Ct. 1793 (2022), arguing that *Egbert* meant the case should be dismissed. (*See* 1:18-cv-00131-TCB, [Doc 330].)

Oral argument should be granted for two reasons. First, this Court must decide whether Ms. Robinson should have been allowed to sue **non-federal officers** under Section 1983, including those who signed government paperwork which clearly stated they **were not a federal employees** and had to abide by their local agency policies regarding the manner in which they conducted themselves at all times relevant to this case. This issue is a novel one that should be decided by this Court so that future "federal task forces" which involve similar facts—especially documented admission of not being a federal employee and documented admissions of mandates to follow agency procedure and Georgia law—have clear guidance on whether Section 1983 applies to certain officers.

Second, Ms. Robinson argues that *Bivens* does apply and thus the District court erred. Because the *Egbert* case is one of the first applications to a use-of-force case in this circuit, gaining this Court's guidance is of upmost importance to future actions in this Circuit based on "*Bivens*" claims.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
    DISCLOSURE STATEMENT ......................................................... C-1

REQUEST FOR ORAL ARGUMENT ..........................................................i

TABLE OF CONTENTS ....................................................................... iii

TABLE OF AUTHORITIES ...................................................................... v

JURISDICTIONAL STATEMENT ............................................................ 1

STATEMENT OF THE ISSUES ................................................................ 1

STATEMENT OF THE CASE .................................................................. 2

    I.   Statement of Facts ...................................................................... 2

    II.  Procedural History ..................................................................... 2

SUMMARY OF ARGUMENT .................................................................. 3

STANDARD OF REVIEW ....................................................................... 4

ARGUMENT AND CITATIONS TO AUTHORITIES..............................5

   I.   Section 1983 Claims Against State Law Enforcement Officers......5

      A. The United States Marshal Service Standard Operating
          Procedures Rely on Local Law Enforcement Agency Rules
          and Regulations for Use of Force, Officer Involved Shooting
          Investigations, Equipment, Reporting, Indemnification, and
          Confidentiality—So Task Force Officers Were Operating
          Under Color of State Law...........................................................6

      B. Other Reasons Officer Were Acting Under Color of State Law...9

   II. *Bivens* Issue.....................................................................................13

Conclusion .............................................................................................20

Certificate of Compliance ......................................................................21

Certificate of Service .............................................................................22

**TABLE OF AUTHORITIES**

Page

## CASES

*Adickes v. S.H. Kress & Co.*,
    398 U.S. 144 (1970) ................................................................. 4

*Anderson v. Liberty Lobby*,
    Inc., 477 U.S. 242 (1986) ....................................................... 4

*Antoine v. Morgan Chase Bank*,
    757 F. Supp. 2d 19 (D.D.C. 2010) ........................................ 5

*Bell v. Hood*,
    327 U.S. 684 (1946) ............................................................... 19

*Bemis Bros. Bag Co. v. United States*,
    289 U.S. 28 (1933) ................................................................. 19

*\*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
    403 U.S. 388, 91 S. Ct. 1999 (1971) .. ii, 1, 3, 13, 14, 15, 16, 17, 18, 19

*Carlson v. Green*,
    446 U.S. 14, 100 S. Ct. 1468 (1980) ................................... 18

*Chappell v. Wallace*,
    462 U.S. 296, 103 S. Ct. 2362, 76 L. Ed. 2d 586 (1983) .................. 17

*\*Egbert v. Boule*,
    142 S. Ct. 1793 (2022) ...................... i, ii, 1, 2, 3, 13, 14, 15, 16, 17, 18

*Galvez v. Bruce*,
    552 F.3d 1238 (11th Cir. 2008) ............................................. 4

*Haig v. Agee*,
    453 U.S. 280, 101 S. Ct. 2766, 69 L. Ed. 2d 640 (1981) .................. 15

*Hernández v. Mesa*,
    140 S. Ct. 735, 206 L. Ed. 2d 29 (2020) ................................ 14, 17, 18

*Impossible Electronic Techniques, Inc. v. Wackenhut Protective*
    *Systems, Inc.,* 669 F.2d 1026 (5th Cir. 1982) ....................... 4

*Lee v. Ferraro*,
    284 F.3d 1188 (11th Cir. 2002) ............................................ 4

*Nixon v. Condon*,
    286 U.S. 73 (1932) ................................................................. 19

**TABLE OF AUTHORITIES – Continued**

Page

*Nixon v. Herndon*,
    273 U.S. 536 (1927) ........................................................................ 19

*Roanoke City Mills., Inc v. Whelchel*,
    298 F. 2d 66 (5th Cir. 1953) ......................................................... 5

*Robinson v. Sauls*,
    46 F.4th 1332 (11th Cir. 2022) ................................................. i, 2

*Swafford v. Templeton*,
    185 U.S. 487 (1902) ........................................................................ 19

*The Western Maid*,
    257 U.S. 419 (1922) ........................................................................ 19

*U.S. v. Classic*,
    313 U.S. 299 (1941) ........................................................................ 10

*United States v. Stanley*,
    483 U. S. 669, 107 S. Ct. 3054, 97 L. Ed. 2d 550 (1987) .................. 18

*Wiley v. Sinkler*,
    179 U.S. 58 (1900) .......................................................................... 19

*Ziglar v. Abbasi*,
    582 U.S. 120, 137 S. Ct. 1843 (2017) ................................... 14, 17, 18

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. IV .................................................................... 19

## STATUTES

6 U.S.C. § 211(e)(3)(A) .................................................................. 15

28 U.S.C. § 1291 .............................................................................. 1

28 U.S.C. § 1331 .............................................................................. 1

28 U.S.C. § 1343 .............................................................................. 1

O.C.G.A. 35-8-21(d) ....................................................................... 10

## JUDICIAL RULES

Fed. R. Civ. P. 56(a) ........................................................................ 4



## JURISDICTIONAL STATEMENT

Pursuant to Federal Rule of Appellate Procedure 28(a) (4) and Circuit Rule 28-1(g), Appellants attest that: (1) the district court had subject-matter jurisdiction over Plaintiffs' complaint under 28 U.S.C. §§ 1331 and 1343; (2) this Court has subject-matter jurisdiction over the district court's final order and judgment under 28 U.S.C. § 1291; and (3) the district court entered its judgment on March 30, 2021 and Appellants timely filed their notice of appeal on April 13, 2021.



## STATEMENT OF THE ISSUES

1. Whether the district court erred by reasoning that Ms. Robinson could not sue non-federal officers under section 1983, as an officer acted under color of state law, when officers signed a document admitting they were not a federal employee and had to abide by their state agency's policies and procedures at all relevant time to this Complaint; and

2. Whether *Bivens* applied to the federal agents, and thus the Supreme Court case, *Egbert v. Boule*, 142 S. Ct. 1793 (2022), did not warrant dismissal of this case.



# STATEMENT OF THE CASE

## I. Statement of Facts

As stated, this Court has already rendered a published opinion based on the facts of this case. The facts of this case have not changed except that on remand, Appellees moved for dismissal of the case based on *Egbert*. (1:18-cv-00131-TCB, [Doc 330].) The district court granted their Motion. (1:18-cv-00131-TCB, [Doc 357].)

## II. Procedural History

Again, this case has already been before this Court. The relevant procedural history is that on remand, the Defendants moved to dismiss the case based on *Egbert*. (*See Robinson v. Sauls*, 46 F.4th 1332 (11th Cir. 2022); (1:18-cv-00131-TCB, [Doc 330].) The lower court granted that Motion. (1:18-cv-00131-TCB, [Doc 357]). Additionally, the district court—early on in the case *infra*—dismissed Ms. Robinson's Section 1983 claims against non-federal officers. (1:18-cv-00131-TCB, [Doc 85].) [1] Ms. Robinson did not appeal that Order on her previous appeal to this Court,

---

[1] Ms. Robinson had employed different lawyers throughout the duration of this case in the District Court; undersigned counsel did file a Motion to Reconsider certain Orders of the Court. (1:18-cv-00131-TCB, [Doc 152].)

but now appeals that Order as well. In sum, Ms. Robinson has now appealed again based on three grounds as represented by her questions presented.



## SUMMARY OF ARGUMENT

The district court erred in prohibiting Ms. Robinson from asserting Section 1983 claims against state law enforcement officers who actually admitted through documentation that (1) they were not federal employees and (2) they must abide by their state agency rules at all times relevant to the facts of this case. (*See* Doc 277-24, Doyle Signed Renewal USM 3B 11.30.15; Doc 277-25, Hutchens Signed Renewal USM 3B 07.27.16.) Significantly, had the district court ruled appropriately, then, whether or not *Bivens* even applied to all but one of the Defendants, at the lower court level, in this case would not have been at issue. Next, Ms. Robinson will demonstrate that even considering *Egbert*, the lower court erred because the facts of this case are similar enough in material ways to render the lower court's opinion in error.



## STANDARD OF REVIEW

This Court reviews a "summary judgment de novo, applying the same legal standards used by the district court." *Galvez v. Bruce*, 552 F.3d 1238, 1241 (11th Cir. 2008). Summary judgment is appropriate only if both no genuine dispute as to any material fact exists and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). Evidence and facts are viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). However, "if the evidence is merely colorable then summary judgment may be granted." *Anderson*, 477 U.S. at 249. Significantly, "[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." *Impossible Electronic Techniques, Inc. v. Wackenhut Protective Systems, Inc.,* 669 F.2d 1026, 1031 (5th Cir. 1982). Furthermore, "when conflicts arise between the facts evidenced by the parties, we [must] credit the nonmoving party's version." *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002). Additionally, on summary judgment, the Eleventh Circuit will construe self- contradictory statements made by a party on a dispositive

issue strongly against that party if the more favorable portion of his self-contradictory testimony is the "only evidence of his right to a verdict in his favor." *See Roanoke City Mills., Inc v. Whelchel*, 298 F. 2d 66, 69-70 (5th Cir. 1953); *accord Antoine v. Morgan Chase Bank*, 757 F. Supp. 2d 19, 24 (D.D.C. 2010) ("Self-contradictory testimony does not create a material issue of fact).



## ARGUMENT AND CITATIONS TO AUTHORITIES

### I.   Section 1983 Claims Against State Law Enforcement Officers

In the lower court's previous orders (1:18-cv-00131-TCB, [Doc 85, Doc 128]), the Court found that because the individual Appellants were deputized as members of a federal task force, the Appellants were operating under color of federal law, rather than state law. *Id*. As a result, Clayton County was dismissed as a party. *Id*. However, Ms. Robinson discovered policies and procedures that implicate Georgia law. The newly discovered evidence was provided to Plaintiff via production of subpoenaed documents provided electronically on November 6, 2019. Thus, at the time of the dismissals (Doc 85, Doc 128) on March 13, 2019, and September 16, 2019, and entry of final judgment (Doc 145) on

November 1, 2019, the evidence was not yet available to Plaintiff. The newly discovered evidence substantiates that TFO Hutchens and TFO Doyle were acting under color of state law.

A. **The United States Marshal Service Standard Operating Procedures Rely on Local Law Enforcement Agency Rules and Regulations for Use of Force, Officer Involved Shooting Investigations, Equipment, Reporting, Indemnification, and Confidentiality—So Task Force Officers Were Operating Under Color of State Law**

The United States Marshal Service Enforcement Operations Standard Operating Procedures (SOPs) implicate state and local policy on at least ten different occasions. First, Section II of the SOP makes clear that these procedures apply to Regional Fugitive Task Forces, implicating the Southeast Regional Fugitive Task Force (SERFT). The SOPs further designate task forces as inter-agency collaborations requiring as-needed meetings to discuss "objectives, resources, capabilities, accomplishments, goals, strategic plans, and individual agency needs." (Doc 152-1 – Pg 4, ¶5, USMS Enforcement Operations, Standard Operating Procedures.) Most importantly, the procedures require deputized USMS task force members to "adhere to the rules, regulations, and polices of their parent agencies" with limited exceptions. *Id* at p. 5, ¶7. If a policy dispute arises, the SOP requires USMS and the

6

parent agency to confer to reach a resolution. *Id.* The collaborative effort continues throughout the procedures; in fact, SOP B11 requires the USMS to "maintain regular liaisons with representatives from participating agencies." *Id* at p. 6, ¶11. The USMS cannot initiate enforcement activity ***without a referral from a local law*** *enforcement agency.* *Id* at p. 7, ¶3. Although deputized under federal law, task force officers remain obligated to their parent law enforcement agency's policies and procedures. In relevant part, the following USMS policies require task force officers to operate under color of state law:

1. "Special Deputy United States Marshalls **will comply with their parent agency policies, procedures, and codes of conduct** as outlined in the Violent Offender or Regional Fugitive Task Force MOU," with some exceptions. *Id* at p. 8, ¶D4. Notwithstanding limited property management USMS policies, the SOP requires task force officers to **obtain parent approval** for USMS issued weapons, alongside training verification on both USMS and the parent agency's course of fire. Task force members **are not allowed** to exceed their parent agency's jurisdiction without prior approval from the parent agency. *Id* at p. 10 ¶ 5. Task force officers "**should wear their parent agency approved equipment** which identifies them as a member of that agency. They should not be issued USMS raid jackets." *Id* at p. 11, ¶c. Task force members are required to **notify local law enforcement parent agencies** prior to executing an arrest warrant. *Id* at p. 12, ¶i.

2. "Special Deputy United States Marshals will complete reports on state and local investigations **consistent with each of their agencies' requirements**." *Id* at p. 17, ¶8.

7

3.  "Special Deputy United States Marshals **shall utilize their parent agencies' authorized equipment** while assigned to USMS Enforcement Operations." *Id* at p. 18, ¶3.

4.  "The replacement or repair cost of personal or department-issued equipment issued to Special Deputy United States Marshals that is lost or damaged in the course of USMS Enforcement Operations **shall be incurred by the parent agency** of the Special Deputy United States Marshal. Indemnity for accident, injury, death, and liability **shall be borne by the parent agency** of the Special Deputy United States Marshal as set forth in the USMS MOU with that agency *Id* at p. 18, ¶4.

5.  "All members assigned to USMS Enforcement Operations shall comply with their parent agencies' guidelines concerning the use of firearms and deadly force." *Id* at p. 19, ¶1.

6.  Following an officer involved shooting with a Special Deputy United States Marshal, "the USMS **will not conduct** an internal investigation . . . but will **assist the parent agency** in obtaining any information needed to support their own investigation." *Id* at p. 19, ¶4-d.

7.  With regard to disclosing confidential information, the SOP requires that USMS **consult with the parent agency** to make disclosure decisions. *Id* at p. 21, ¶ H. News-related disclosures similarly require coordination between USMS and participating parent agencies. *Id* at p. 21, ¶ I.

Significantly, this is a use-of-deadly force case and in that respect, and worth repeating: "All members assigned to USMS Enforcement Operations **shall comply with their parent agencies' guidelines concerning the use of firearms and deadly force**." (*Id* at p. 19, ¶1.) That means, with respect to the pivotal issue in this case, Officer Doyle

and Hutchens were guided and required to follow their respective state agency rules, regulations, and laws.

### B. Other Reasons Officer Were Acting Under Color of State Law

The USMS Standard Operating Procedures confirm that deputized task force officers are operating under color of state law. First, the special deputization is a **limited federal authority**, and it does **not** grant task force officers federal employment. (*See* Doc 152-2, Oath of Office Special Deputation Form USM-4.) Thus, task force officers **remain employed by local** law enforcement agencies (LEA) ***with special federal privileges***. As local LEA employees, task force officers are required to comply with their parent agency's policies and procedures—policies which derive from Georgia law.

General arrest powers, which derive from Georgia law, are the foundational qualification for participating in a federal task force. O.G.G.A. 35-8-1 *et. seq.* To maintain general arrest powers, officers must recertify annually. Annual recertification requires officers to receive training on the constitutional and legal limitations on the use of deadly force, agency deadly force policy, de-escalation techniques, and weapon

proficiency. *Id*. **Failure to comply renders local officers ineligible for task force participation**. O.C.G.A. 35-8-21(d). (*See* Doc 152-3, USMS Form 3A, Application for Special Deputation/Sponsoring Federal Agency Information, Questions 17, 19, 20, and 21.) But for the officers' employment with local law enforcement agencies, who empower them with Georgia general arrest powers, the task force officers would not have had legal authority to execute the arrest warrant on the day in question. *See*, *U.S. v. Classic*, 313 U.S. 299, 326 (1941) (explaining that "[m]isuse of power, possessed by virtue of state law and **made possible only because the wrongdoer is clothed with the authority of state law**, is action taken 'under color of' state law.'") (emphasis added).

Moreover, task force officers are acting under color of state law because they must follow their employer's operational and administrative policies. Notably, all task force officers are required to follow their agency procedures for use of force. Additionally, **parent law enforcement agencies remain responsible for managing their task force officers by approving weapons use, authorizing out-of-jurisdiction travel, and providing agency-issued uniforms**. In the same way that parents remain liable for the bad acts of their children,

local law enforcement agencies remain responsible for officer-involved shooting investigations and any negative derivative therefrom via the indemnification clause. For instances where parent policies are not the default, the USMS SOP requires a cooperative effort between the two agencies. For example, the policies require consultation between USMS and parent agencies for disclosure of confidential information and disclosure of information to a news agency. At the very least, the USMS SOP shows that task force officers are operating under color of both state and federal laws.

Additionally, Memorandum of Understandings demonstrate that all Appellees were acting under color of state law. Specifically, the Clayton County MOU under which Hutchens was operating states:

1. Mission: "The primary mission of the task force is to investigate and arrest, as part of **joint law enforcement operations**, persons who have active state and federal warrants for their arrest." (Doc 152-4 - Pg 1, USMS Regional Fugitive Task Force-MOU with Clayton County Police Department. (emphasis added)

2. "Participating agencies **retain responsibility** for the cases they refer to the RFTF." *Id* at p. 1. (emphasis added)

3. "Administrative matters which are internal to the participating agencies **remain the responsibility of the respective agencies**. Furthermore, each agency **retains**

11

**responsibility for the conduct of its personnel**." *Id* at p. 2. (emphasis added)

4. "Original reports of investigation, evidence, and other investigative materials generated, seized, or collected by the RFTF **shall be retained by the agency in the RFTF responsible for the case**." *Id* at p. 3. (emphasis added)

5. "All members of the RFTF **will comply with their agencies' guidelines** concerning the use of firearms, deadly force, less-than-lethal devices, to include completing all necessary training and certification requirements. All members of RFTF and their parent agencies will read and adhere to the DOJ Policy Statement on the Use of Less-Than-Lethal Devices, dates May 16, 2011. Copies of all applicable firearms, deadly force, less-than-lethal policies shall be provided to the RFTF Chief Inspector and each connected task force officer. In the event of a shooting involving task force personnel, the incident will **be investigated by the appropriate agency(s)**." *Id* at p. 3. (emphasis added)

As explained in the USMS SOP, the Memorandum of Understanding is the inter-agency contract between the USMS and the local law enforcement agency. MOU's serve as the foundational directive because they detail important operational, administrative, and conflict procedures. Initially, the mission statement reinforces the idea of partnership by saying "joint operations." Thereafter, the MOU's confirm that parent agencies—though receiving assistance from a federal task force—remain responsible for the case and task force personnel. These policies, again, implicate state law because local LEAs rely on Georgia

laws for training, certification, and policy-making authority. Finally, the officer-involved shooting policy reminds local LEAs that they must conduct their own investigations, ***even when the shooting occurred in the context of task force operations***. In short, these MOUs confirm that the onus of personnel management remains with the parent LEA. Because Georgia law influences how LEAs manage officers, **task force members continue to operate under color of state law**. As a result, the judgment against Clayton County should not be certified as final.

## II. *Bivens* Issue

Plaintiff is entitled to a *Bivens* remedy in this case because whether you consider the Motion-to-Dismiss Standard or the Summary-Judgment Standard, the facts and evidence show that this case is substantially and predominantly similar to the claim brought in *Bivens*, and nothing "is different in a meaningful way" therefore no "new context" arises. Mr. Bivens suffered excessive force by law enforcement and was manacled in the midst of mental anguish and punishment; likewise, Jamarion Robinson suffered excessive force by law enforcement and was cuffed and dragged down a stairway after suffering 59 bullets from officers and agents and then died as a result. *Egbert*, 142 S. Ct. at 1813-14; *see also*

13

*Ziglar v. Abbasi*, 582 U.S. 120, 137 S. Ct. 1843 (2017). Relevantly, "[t]he *Ziglar* Court offered a laundry list of differences that "might" be meaningful, including "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action . . . ." *Hernández v. Mesa*, 140 S. Ct. 735, 206 L. Ed. 2d 29 (2020). "The Court recognized, however, that some differences "will be so trivial that they will not suffice to create a new *Bivens* context," which is what we find here in the Jamarion Robinson case herein. *Id* at 140 S. Ct. 735, 206 L. Ed. 2d 29 (2020)" *Egbert*, 142 S. Ct. at 1814.

There are no new categories of defendants in the Robinson case that would trigger a new context. For instance, in this case, as in *Bivens*, there are law enforcement officers operating under the color of law, carrying firearms, carrying handcuffs, using unlawful excessive force. "It is of course well established that a *Bivens* suit involving an entirely "'new category of defendants'" arises in a "'new context.'" *Ziglar*, 137 S. Ct. 1843, 198 L. Ed. 2d 290 (2017); *see also Hernández*. Significantly, "[t]he Court, however, has never relied on this principle to draw artificial distinctions between line-level officers of the 83 different federal law

enforcement agencies with authority to make arrests and provide police protection." *Egbert*, 142 S. Ct. at 1815.

Moreover, the *Egbert* case is wholly about **national security and immigration**. So much so Justice Thomas writing for the Court stated: "During the alleged altercation with Boule, Agent Egbert was carrying out Border Patrol's mandate to "interdic[t] persons attempting to illegally enter or exit the United States or goods being illegally imported into or exported from the United States." 6 U.S.C. § 211(e)(3)(A). Because "[m]atters intimately related to foreign policy and national security are rarely proper subjects for judicial intervention," *Haig v. Agee*, 453 U. S. 280, 292, 101 S. Ct. 2766, 69 L. Ed. 2d 640 (1981), we reaffirm that a *Bivens* cause of action may not lie where, as here, national security is at issue." *Egbert*, 142 S. Ct. at 1804-05.

Here, in this case, Jamarion Robinson's death in a metro Atlanta suburb at the hands of law enforcement had absolutely nothing to do with national security or immigration. All one has to do is juxtapose Robinson's case to actual cases of **real national security or immigration issues**, *e.g.*, Jack Teixeira, the 21-year-old Massachusetts Air National guardsman indicted for leaking classified national defense

information; Robert Hanssen, the recently deceased former FBI agent convicted after working with handlers from the Soviet Union, providing highly classified national security information; or even David Moerschel and Joseph Hackett, militant group members just recently sentenced to prison for seditious conspiracy arising from the Jan. 6, 2021, attack on the U.S. Capitol. Had allegations of excessive force been made in cases such as these, then clearly national security or immigration issues would have been at the center of any discussion, legally speaking. However, Robinson's case does not align anywhere close to a national security or immigration concern, and consequently the lower court erred in reasoning that national security issues played a relevant factor in the decision to dismiss Ms. Robinson's case.

Further, there are no special factors that apply in this case that would cause the removal of a *Bivens* remedy. Indeed, in the final analysis of all the considered-true facts at this stage of litigation, or the facts viewed under the summary judgment standard, Ms. Robinson's claim is materially indistinguishable from the claim brought in *Bivens*. Moreover, "[e]ven assuming that this case presents a new context, no special factors warrant foreclosing a *Bivens* action." *Egbert*, 142 S. Ct. at 1815.

16

In determining what are the major special factors the Supreme Court "has not defined the phrase 'special factors counselling hesitation'"; rather, the Supreme Court has recognized that the "inquiry must concentrate on **whether the Judiciary is well suited, absent congressional action or instruction**, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Ziglar*, 137 S. Ct. 1843; *see also Hernández,* 140 S. Ct. at 742-744. For example, where a claim "would call into question the formulation and implementation of a general policy" or "require courts to interfere in an intrusive way with sensitive functions of the Executive Branch," recognizing a *Bivens* action may be inappropriate." **This *Robinson* case does not do that**. *See Ziglar*; *see also*, *e.g.*, *Chappell v. Wallace*, 462 U. S. 296, 300, 103 S. Ct. 2362, 76 L. Ed. 2d 586 (1983) (reasoning that precedent thus establishes that "separation-of-powers principles . . . should be central to the [special-factors] analysis.") And when that reasoning is applied to the instant case, the Appellees' Motion(s) should have been denied. *See Ziglar*; *see also Egbert*.

All that established, *supra*, just as in *Bivens*, herein, there exist no "alternative remedy which it explicitly declared to be a *substitute* for

17

recovery directly under the Constitution and viewed as **equally effective**." *Carlson v. Green*, 446 U.S. 14, 18-19, 100 S. Ct. 1468, 1471 (1980) (emphasis added). Nor, would this Court be extending *Bivens* into a new field, as demonstrated by the facts in both *Bivens* and this instant claim that was brought by Plaintiff Ms. Robinson, the mother and natural parent of the deceased Jamarion Robinson. Consequently, there is no "risk of undermining" the executive or legislative branches or "reason to hesitate before extending *Bivens* into this field." *Hernández*, 140 S. Ct. 735; *Egbert*, 142 S. Ct. 1793. Or "any reason to think that "judicial intrusion" . . . might be "harmful" or "inappropriate," *United States v. Stanley*, 483 U. S. 669, 681, 107 S. Ct. 3054, 97 L. Ed. 2d 550.

Though the Supreme Court in *Egbert* may have narrowed *Bivens* complaints the Court only "thinly veils its disapproval of *Bivens*,[… and] unmistakably stops short of overruling *Bivens* and its progeny, and appropriately so. …[t]his Court has reaffirmed that it did "not inten[d] to cast doubt on the continued force, or even the necessity, of *Bivens* in the search-and-seizure context []." *Ziglar*, 137 S. Ct. 1843; *Egbert*, 142 S. Ct. 1793 (J. Sotomayor).

18

Plaintiff and her deceased son Jamarion are entitled to seek recovery under the Fourth Amendment, which "guarantees to citizens of the United States the absolute right to be free from unreasonable searches and seizures carried out by virtue of federal authority. And 'where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief.'" *Bell v. Hood*, 327 U.S., at 684 (footnote omitted); *see Bemis Bros. Bag Co. v. United States*, 289 U.S. 28, 36 (1933) (Cardozo, J.); *The Western Maid*, 257 U.S. 419, 433 (1922) (Holmes, J.), *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 392, 91 S. Ct. 1999, 2002 (1971). Furthermore, "That damages may be obtained for injuries consequent upon a violation of the Fourth Amendment by federal officials should hardly seem a surprising proposition. Historically, damages have been regarded as the ordinary remedy for an invasion of personal interests in liberty." *See Nixon v. Condon*, 286 U.S. 73 (1932); *Nixon v. Herndon*, 273 U.S. 536, 540 (1927); *Swafford v. Templeton*, 185 U.S. 487 (1902); *Wiley v. Sinkler*, 179 U.S. 58 (1900). *Bivens* 403 U.S. 388, 395-96, 91 S. Ct. 1999, 2004 (1971).



## CONCLUSION

Ms. Robinson requests that this Court vacate the lower court's orders based on the arguments above and thus provide Ms. Robinson with a jury trial on excessive force, while reasoning that the Appellees were acting under color of state law.

Respectfully submitted,

/s/ Mario B. Williams
(Ga. Bar No. 235254)
    *Counsel of Record*
NDH LLC
44 Broad Street NW, Suite 200
Atlanta, GA 30303
Ph: (404) 254-0442
Fax: (404) 935-9591
mwilliams@hdrattorneys.com
admin@hdrattorneys.com

*Counsel for Appellant*

June 26, 2023

20

## CERTIFICATE OF COMPLIANCE

**1. Type-Volume**

This document complies with the word limit of FRAP 32(a)(7)(B) because, excluding the parts of the document exempted by FRAP 32(f) and 32(a)(7)(B)(iii), this document contains 3,899 words.

**2. Typeface and Type-Style**

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word Office 365 Version 11 with 14 point Century Schoolbook font style.

Respectfully submitted,

/s/ Mario B. Williams
(Ga. Bar No. 235254)
   *Counsel of Record*
NDH LLC
44 Broad Street NW, Suite 200
Atlanta, GA 30303
Ph: (404) 254-0442
Fax: (404) 935-9591
mwilliams@hdrattorneys.com
admin@hdrattorneys.com

*Counsel for Appellant*

June 26, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2023, I served a copy of the foregoing upon counsel for Defendants by filing the same via the Court's CM/ECF system, which shall cause the same to be electronically transmitted to:

Darcy F. Coty
Department of Justice
75 Ted Turner Dr, SW, Ste 600
Atlanta, GA 30303
darcy.coty@usdoj.gov

Respectfully submitted,

/s/ Mario B. Williams
(Ga. Bar No. 235254)
   *Counsel of Record*
NDH LLC
44 Broad Street NW, Suite 200
Atlanta, GA 30303
Ph: (404) 254-0442
Fax: (404) 935-9591
mwilliams@hdrattorneys.com
admin@hdrattorneys.com

*Counsel for Appellant*

June 26, 2023

22